IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JARITA HUFFMAN, for CALVIN HUFFMAN, DECEASED, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:16cv185-SRW ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Jarita Huffman, on behalf of Calvin Huffman, deceased, commenced this action on March 18, 2016, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner denying Mr. Huffman's application for a period of disability and disability insurance benefits. *See* Doc. 1; Doc. 10; R. 19. Mr. Huffman alleged disability as of October 7, 2011. *See* R. 19. On July 21, 2014, Administrative Law Judge Renita Barrett-Jefferson ("the ALJ") issued an adverse decision after holding a hearing on the plaintiff's application.[3]  *See* R. 19-34. The Appeals Council denied

---

[1] Nancy A. Berryhill is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. The Clerk of Court is **DIRECTED** to take the appropriate steps to reflect this change on the docket sheet.

[2] For the purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, as that was the version of the C.F.R. in effect at the time the claim was filed. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q. 3.

[3] Plaintiff was represented by counsel at the hearing before the ALJ. *See* R. 19.

1

plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. *See* R. at 1-3.

In the instant appeal, the plaintiff asks that the court remand this cause to the Commissioner for additional proceedings under sentence four of 42 U.S.C. § 405(g). *See* Doc. 10. This case is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to entry of final judgment by the Magistrate Judge. *See* 28 U.S.C. § 636(c). *See* Doc. 7; Doc. 8. For the reasons stated herein, and based upon its review of the record, the court finds that the Commissioner's decision is due to be affirmed.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] decision for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). In other words, this court is prohibited from reviewing the Commissioner's findings of fact *de novo*, even where a preponderance of the evidence supports alternative conclusions.

While the court must uphold factual findings that are supported by substantial evidence, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to a formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## DISCUSSION

The ALJ found that Mr. Huffman suffered from the severe impairments of depression, Post-Traumatic Stress Disorder ("PTSD"), cavous deformity of the foot, toe ulcers, toe arthritis, flat feet, bursitis, and chronic obstructive pulmonary disorder ("COPD"). R. 21. However, this appeal is limited to the ALJ's findings as to Mr. Huffman's mental limitations, which include PTSD.[4] *See* Doc. 10 at 1-9. The ALJ

---

[4] In her written decision, the ALJ notes that Mr. Huffman "was honorably discharged from the military in 2009." R. 27. His first wife and child died from an unspecified illness. R. 26. He later remarried, and he

4

concluded that Mr. Huffman did not have an impairment or combination of impairments that meet or medically equal a listed impairment. *See* R. at 22-24. As she must, the ALJ considered all of his impairments individually and collectively in determining the residual functional capacity ("RFC"). *See* R. 22-32.

The ALJ made the following RFC determination:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant should have a sitting / standing alternative with the ability to change sitting or standing positions every 30 minutes. He can occasionally pull / push foot controls. He can occasionally reach overhead with his right upper extremity, climb ramps and stairs, balance, stoop, kneel, and crouch but never climb ladders and scaffolds or crawl. He should avoid exposure to unprotected heights and moving mechanical parts. He should avoid concentrated exposure to extreme temperatures. He can perform simple, routine, and repetitive tasks. He should have no public contact and contact with co-workers and supervisors should be casual and brief with supportive supervision. He can tolerate a few gradually introduced changes in a routine work setting.

R. at 25. At step four, the ALJ found that Mr. Huffman could not perform his past relevant work. *See* R. at 32. The ALJ additionally found that there are jobs in significant numbers in the national economy that Mr. Huffman could perform. *Id.* The ALJ's findings resulted in a determination that Mr. Huffman "has not been under a disability … from April 1, 2007, through [July 21, 2014]" R. at 33-34.

The plaintiff raises two arguments in support of this appeal: (1) the ALJ erred by basing her findings about Mr. Huffman's mental limitations "primarily" on an assessment by non-examining state agency psychologist Dr. Steven Dobbs, Ph.D.; and (2) the ALJ was

---

and his second wife had children. Mr. Huffman began treatment for PTSD, depression, and other mental impairments after the loss of his wife and child.

obligated to order a consultative medical examination so that a medical source could give an expert opinion regarding the medical evidence of record for the time period after Dr. Dobbs' evaluation on May 16, 2013. *See* Doc. 10 at 8. The Commissioner maintains that the ALJ did not rely "primarily" on Dr. Dobbs' opinion evidence and that a consultative examination is not mandated. Doc. 13. The court agrees with the Commissioner.

A plain reading of the ALJ's decision demonstrates that she did not assign primary weight to Dr. Dobbs' opinion evidence or rely in substantial part on his medical source opinion as the basis for her findings. The ALJ provides a detailed and accurate account of Mr. Huffman's medical records regarding mental limitations, particularly PTSD, and the plaintiff does not challenge the accuracy of the ALJ's treatment of the relevant evidence of record. R. 22-32; Doc. 10 at 1-7 (setting out the ALJ's treatment of the medical and other evidence of record regarding Mr. Huffman's mental limitations).

In 2009, Mr. Huffman "denied undergoing any mental health care following the death of his first wife and child." R. 26. Vocational rehabilitation notes from July 2012 describe Mr. Huffman as "having situational depression absent of suicidal or homicidal ideation." R. 23 (citing Exhibit 4F). Mental stress evaluation records from November 2012 reflect that Mr. Huffman "admitted that he elected to stop taking his medications without approval from his treating physician." R. 28 (citing Exhibit 1F at 66). At another mental status evaluation in December 2012, Mr. Huffman reported that he was taking anti-depressants "that afforded him some relief with his symptoms." R. 28 (citing Exhibit 1F at 35). At a mental status evaluation the following month, Mr. Huffman appeared to be doing

well, but "[h]e admitted that he stopped taking his anxiety medications." R. 28 (citing Exhibit 1F at 71.

Mr. Huffman was hospitalized from March 26-28, 2013, "after expressing homicidal ideations towards his wife and suicidal indications without specific intent." R. 28 (citing Exhibit 1F at 28). He complained of PTSD and insomnia. *Id.* Mr. Huffman improved after being treated with medication. *Id.* A mental status examination in March 2013 showed that plaintiff's mental state was worsening, and he reported using marijuana and benzodiazepines. *Id.*; Exhibit 1F at 359.

On May 16, 2013, Dr. Dobbs reviewed the medical evidence that was available up to that date, and he determined that Mr. Huffman has only moderate limitations in activities of daily living and social functioning, concentration, persistence, and pace. R. 23 (citing Exhibit 2A at 7-10, 13-15). There was no evidence of decomposition. *Id.* Dr. Dobbs' limitations with respect to interaction with others and ability to maintain concentration or understand instructions are reflected in the RFC.

From "October 28-31, 2013, the plaintiff was hospitalized with complaints that resulted in diagnostic impressions of PTSD, by history; mood disorder, not otherwise specified; marijuana abuse and a GAF score of 40." R. 29. He also reported nightmares "that worsened after he stopped taking his medications for two months prior to admission." *Id.* Again, the ALJ observed that, "Once treatment was initiated, [Mr. Huffman] acknowledged an improved mental status, which was also reflected in a discharge GAF of 50 …. He was discharged in stable condition[.]" *Id.*

In January 2014, treatment records show that Mr. Huffman was diagnosed with depression and PTSD, and that he was prescribed medications. R. 616-618. Records from April 2014 show that Mr. Huffman sought treatment for mental impairments, and that his mental health treatment plan included medication, which he admitted helped with insomnia. R. 30 (citing Exhibit 5F at 35). At that time, "he was in a good mood without any sign of … suicidal or homicidal ideations. … He stated that he and his wife were looking forward to the birth of their baby." R. 30 (citing Exhibit 5F at 105).

Specifically, the ALJ assigned "'[g]reat weight' … to the assessment of Dr. Dobbs which is consistent with the overall evidence of record. Great probative value has also been provided to the treatment records which reflect some limitations, but not to the level of severity which would render [Mr. Huffman] totally disabled." R. 31. In relevant part, the ALJ found that Mr. Huffman's mental impairments were "well controlled" when he was "properly medicated." *Id.* The ALJ's written decision demonstrates that she carefully considered the entirety of the record, particularly the medical evidence of record, in making her determinations of fact. Moreover, the court independently reviewed the exhibits relied upon in the ALJ's written decision, as well as the administrative record as a whole, and the undersigned finds that the ALJ's decision is supported by substantial evidence. Insofar as plaintiff maintains that the ALJ's decision is predominately based on Dr. Dobbs' medical source opinion, the court finds no basis in the decision or record to support plaintiff's argument on this point.

Plaintiff also argues that, because medical evidence that post-dates Dr. Dobbs' evaluation was submitted to the Commissioner, the ALJ was required to order an additional

consultative examination for the purpose of having medical expert opinion evidence on the record before she reached a final determination on the merits of plaintiff's application. Doc. 12 at 8-9. The plaintiff is incorrect.

"An individual claiming Social Security disability benefits must prove that she is disabled." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citation omitted). That burden of proof mandates that the plaintiff come forward with evidence to substantiate a claim. In this case, Mr. Huffman's attorney made no motion or other attempt to supplement the record at the administrative level with an additional consultative evaluation prior to or during the hearing before the ALJ.

To the extent that plaintiff is arguing that the ALJ cannot, as a matter of law, base an RFC and disability determination on the medical evidence of record, including treatment notes and medication history, without an expert opinion from a medical source, and that the ALJ had an obligation to order a consultative exam, Doc. 10 at 8, such is not the case. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) ("Although a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.") (citing 20 C.F.R §§ 404.1513, 404.1527, 404.1545)); *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011) (holding that "the law of this Circuit does not require[] an RFC from a physician"); *Gregory v. Astrue*, 2008 WL 4372840, at *8 (M.D. Fla. Sept. 24, 2008) ("While the RFC assessment is determined by the ALJ, the assessment must be based upon all relevant medical and other evidence concerning a claimant's remaining ability to do work despite

her impairments. A medical opinion is, therefore, not required to validate a RFC finding by the ALJ. The ALJ is only required to base his decision upon the medical evidence of record and not his own lay medical opinion. In this case, the ALJ reviewed and relied upon the medical evidence in making his RFC evaluation which was appropriate even though there was not a medical source statement included in the record.") (citing *Moore*, 405 F.3d at 1212; 20 C.F.R. § 404.1545(a)(1)) (footnotes omitted).

Moreover, the ALJ did not commit legal error by failing to order an additional consultative examination, particularly in light of the fact that one was not requested by Mr. Huffman's attorney prior to or during the hearing before the ALJ. The plaintiff has not identified any evidentiary deficiencies that would mandate additional development of the administrative record due to clear prejudice or manifest unfairness. *See, e.g., Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (citations omitted).

There simply is no error here; the ALJ's written decision demonstrates that her findings are based on the medical and other evidence of record, and substantial evidence supports the ALJ's determinations. The ALJ's determinations are also in accordance with proper legal principles.

## CONCLUSION AND ORDER

Upon consideration of the parties' briefs and the record, the Commissioner's decision is based on substantial evidence and is in accordance with controlling law. The Commissioner's decision will be AFFIRMED by a separate judgment.

Done, on this the 29th day of March, 2018.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge